Good morning, Your Honors. Sorry for the delay. I left here after 1 yesterday. I had to fly back to L.A. to speak at a commencement. I caught the early flight. I think this is Seattle. It is, Your Honor. All right, so we'll call the first case, Interstate Media. That's submitted. And this is Alcon-Ailon. Okay. Good morning, Your Honors. My name is Michelle Radosevich, and I'm here this morning representing Rosinda Alcon-Ailon. I'd like to reserve three minutes of my time for rebuttal. Ms. Alcon is a young Mayan woman from a remote corner of Guatemala near the Mexican border. She cannot speak or write in Spanish, let alone English. She was 23 years old, married and expecting her first child when she found guerrilla pamphlets hidden in her own home. When she confronted her husband about the material, he beat her and left the house. That evening, guerrillas came to the house and beat and raped Ms. Alcon and forced her to go with them to the mountains. As a result, she lost the child that she was carrying. She was held for several months and raped repeatedly. She escaped, however, and walked across the border to Mexico and from there northward to the United States. She entered the United States in September 95, and in April of 96, she applied affirmatively for asylum. Although she received acknowledgment of the application, she was never contacted for an interview, and she was picked up and placed in deportation proceedings in January of 1997, so she was not allowed to pursue her claim affirmatively. Well, I think we probably know the facts. I think you did a good job of that. I do have a question. It's a little bit jumping ahead. Let's assume for the sake of argument, if the court were to find that no substantial evidence to support the BIA's determination or that the evidence in the record, if believed, compels a conclusion that the petitioner is entitled to asylum, does the law require us to grant the petition or remand it to the BIA for a credibility determination? Well, regretfully, it does require a credibility determination because the BIA expressly did not reach that issue. If it had said nothing, this court would be entitled to assume that they were adopting the IJ's determination. I read Ventura again this morning before I came, the Supreme Court opinion, and I believe it requires a remand. Panel opinion in Ventura was much better. The panel opinion in Ventura was far better, Your Honor, written by a very wise judge. The question before this court today is whether Ms. Alcone's kidnapping and rape were on account of her political opinion, as is required by the asylum statute. And I would submit that under this court's precedent, Del Carmen Molina, Ventura, Rios, and this past month, Lopez and Cabedi, the answer must be yes. A comparison of these cases, I think, is instructive. Ms. Alcone came from a pro-government family. She testified that her father and her brothers had served in the Civil Patrol, which was a pro-government militia. She also testified that the guerrillas had tried to recruit her brothers, and at least one of those brothers had fled to the United States and received asylum. These family connections were certainly known to Ms. Alcone's persecutors because, of course, they were led by Ms. Alcone's husband. Similarly, in Del Carmen Molina, Ventura, and Rios, the asylum applicants all came from Ms. Alcone, in this case, herself also opposed the guerrillas. She testified that she opposed the guerrilla actions because she was a good Catholic. She said, quote, I did not want to go with them because I know that because they were robbers and beat people up, and they went into stores and robbed, and I didn't want that kind of thing, unquote. She testified that the guerrillas gave her green clothes, but she refused to put them on. Similarly, the asylum applicant in Del Carmen Molina testified that she was, quote, no agree with the guerrilla opinion. Mr. Ventura testified that he was not familiar with the ideology of the guerrillas, but that he sympathized with the military, not the guerrillas. Very similar to this case. There's a lot of evidence that supports what you're talking about, but my concern is the terms of if there was some evidence suggesting that this despicable persecution was motivated by the guerrillas' desire to conceal their criminal activity or to evade detection, as opposed to punishing her for harboring different political opinions or religious beliefs. How do we reconcile that in terms of, I mean, obviously, because we have to look at it differently than if we're deciding it firsthand. Right. Because there is evidence in the record to that, so how do you square that with the substantial evidence, you know, whether the BIA's position is supported? Well, I think the BIA's leap here on the evidence, to me, is incredible. They say that the guerrillas were simply criminals, and that they feared that Ms. Alcone would report their criminal behavior. But Ms. Alcone had no knowledge of specific crimes. She wasn't a witness to crimes. But what about she found that, you know, her husband found the pamphlet, and then things went downhill from there. Right. What the pamphlets told her wasn't a specific crime. What the pamphlets told her was that her husband was likely affiliated with the guerrillas. And it was knowledge of status that she had. And that knowledge of status caused her to confront her husband. And once she confronted her husband, the rest of the guerrillas descended on the house and beat her and kidnapped her. What could they have been afraid of, other than her political opinions? She was married to Excuse me. Suppose they were afraid that she would report them, and that that would hurt them, it would diminish their effectiveness or whatever they might be. And so they kidnap her and keep her with them, fearing that if they don't, she's going to kidnap her, or that she's going to report them. Right. Is that imputing to her a political opinion that's contrary to their guerrilla movement? The key here, I think, is that she would have no reason to report them as guerrillas unless she opposed the guerrillas. Yes. She was married I missed that step. to a guerrilla. She was expecting her first child. If she just simply wanted her life to go on as it had been, all she had to do was to not confront her husband about this situation. It's the confrontation with the husband and his knowledge of her anti-guerrilla feelings that had tripped, you know, that obviously I think in this case triggered what happened to her. You only have to show, you know, in part, political opinion in part. In part. That's correct. And here the BIA did not do a mixed motives analysis. They simply assumed that there was criminal behavior, and because the behavior was criminal, it wasn't political. And, I mean They always do that. They always do that. And, in fact, since persecution is criminal in nearly every society, it's almost redundant to say that behavior is criminal. The fact that behavior is criminal has nothing whatsoever to do with, one way or another, with political motivation. You have to look further to see whether there's political motivation. Do you have a little time? I do. Thank you. Good morning. Joan Smiley from the Department of Justice in Washington here on behalf of the Attorney General. Can I ask you to just jump in and do one thing? Yes, Your Honor. Because I think we are really familiar with the facts here. If, what would be wrong with finding that there is substantial evidence in the record, if believed, that compels the conclusion that the guerrillas had a dual or mixed motive of persecuting the petitioner, as opposed to one aim to keep from reporting them, and the other to punish her for refusing to join them? What would be wrong with that? In the government's view, what would be wrong would be there's three things. First, there's no evidence that the petitioner was ever singled out for her political opinion in any way. Number two, there's no evidence that she ever expressed a political opinion to these guerrillas who mistreated her. And the mistreatment was brutal, as the board ---- They were buddies of her, quote, husband. And after she resisted joining the guerrillas and showed them, you know, all those things he had hidden under the bed, she's pregnant, he beat the hell out of her, right? And then the next thing you know, his friends come in there from the guerrillas and they gang rape her. This is not a forced recruitment case, Your Honor. This is not a forced recruitment case. This is a case of, yes, she was living with this fellow, her common-law husband, Mr. Mendez. She discovered incriminating materials. He wanted a recruiter, didn't he, her husband? There's no clear testimony. He told her, come with me, you know. Didn't he say that? Isn't that in the record? It appears that this began as a personal dispute of some sort. After she found these materials, he beat her up. The following day, his guerrilla affiliates came, and according to her testimony, which was found not credible by the immigration judge, the brutal treatment ensued. But the third reason why that shouldn't be the case is because there's no evidence here ---- and this is the sole issue, I think, to be decided ---- that the guerrillas' motivation was anything other than criminal. There's really no evidence. Ms. Alcon-Ilan did not show that they were motivated by a political opinion or any other characteristic of hers that they sought to overcome. What did they say to her when this gang-rape was about to commence? There's no clear evidence of that, and unlike the cases that my opponent has cited this time, they are distinguishable in that in two respects. First, the alien was found credible in Lopez, Jaheed, Rios, Del Carmen, Molina, and Ventura. And the second means that we can distinguish them. Why did he find her incredible? The immigration judge. The immigration judge found her incredible on the basis of many inconsistencies. For instance, in her first asylum application, she didn't even mention one word about this rape that she alleges occurred in the kidnapping. It's strictly based on her dispute with her husband about finding the materials. But it's not uncommon when people fill these things out, and they usually have some notorious help them. Who helped her with this? There's a name on the application that was illegible to me. They want you money for doing it, and they do it fast. I don't know that that... You can tell an immigration judge when you get up there. So we encounter this all the time. The whole system is kind of, the best word that comes to mind is corrupt, the way we run it. You know, who can appear before the immigration court, how that's handled. You can be a disbarred lawyer and appear before the immigration judge. Do you know that? I know that one can be an accredited representative and appear in those proceedings. The second way that they can... Yes, though. Even if the appellant was to get over this hurdle, that still doesn't mean that the appellant would get over the credibility hurdle at this point, correct? Because that would have to go back to the BIA to look at that. Yes. You know, I mean, does what you have, if believed, compel that she meets this criteria, but by the same token, the BIA did not pass on what was there in terms of why the IJ didn't believe her? Because if it's all... You know, right now we're discussing in terms of that, you know, almost like taking it as a pleading in a civil case or something along those lines. Would these, you know, does she meet that prong for asylum? But if you don't believe it, then if it's all made up, then she still loses, right? Right. And under the Supreme Court's decision in Ventura, then under those circumstances, a remand would be appropriate rather than the court deciding the issue in the first instance. But another important point that I would like to make is that in the cases that my opponent has cited, in at least three of them, there's very clear evidence that the persecutors expressed a motive. That would be in Lopez, Kibiti, and Rios. There was... It's very clear in those cases. And for instance, in Lopez, the guerrillas chastised him for working for wealthy people and supporting the rich. In Kibiti, the soldiers told her during the rape that they knew of her involvement with a prior government. And in Rios, the guerrillas told her why they wanted to harm her. They indicated that they kidnapped her because her family members had killed people and they wanted revenge. Here it's a big leap to align herself with the facts in those cases and try to benefit by them. In common sense, it's not a very big leap. Well, Your Honor... They dragged her off, didn't they? We would respectfully disagree in that... Didn't they drag her off to their... Her testimony, which again was found not credible, was that she was beaten by her husband and then kidnapped by guerrillas with whom he was associated and held for three months, mistreated, subjected to brutal treatment. We don't dispute that. The only issue is, was that brutal treatment on account of her political opinion or imputed political opinion, or was it in the board's view on account of criminal motives on the part of these guerrillas who wanted to punish her not for an opinion that they sought to overcome but because of whatever was going on between her and Mr. Mendez, their compatriot? Well, if we're not making a credibility call here, all right, so putting that aside, correct, we're not making a credibility call here, right? That would be appropriate to not make it, yes. And I think that co-counsel said that essentially as well. So then do we... But then still don't we just have to look at all whatever was said before the IJ and decide whether and whether you look, is there substantial evidence there or does it compel a different decision? Well the court... And I'm more wondering about the mixed motives if you just look at all of that without making a credibility call. I'm not necessarily agreeing with what I've just heard. I'm just trying to, you know... The court is reviewing the board's decision, not the immigration judge's decision. And here, of course, the board assumed her credibility. But even assuming that she was credible and assuming the brutal nature of the treatment, which is in the board's decision, the board found that it was not on account of a protected ground. So the credibility determination is not really before the court in that the board did not agree with the immigration judge. It assumed her credibility. Why can't we dispose of the case here? No, I mean, there's no... Assumed that she was credible. We assumed that she was credible. The board did. And then we decide whether what she went through was in part a result of her, quote, political... Well, isn't Ventura the answer to that? Yes. Under the Supreme Court's reasoning in Ventura, a remand would be appropriate rather than deciding the case in the first instance on issues that have not been addressed by the board. You know, Ms. Lally, that is kind of the problem that I've been thinking about is if we were to look at the case, we'd say, well, given this evidence, and assuming she was credible, the board could find that she was entitled to asylum, therefore, we'll remand and let them determine the credibility issue because if he is, the board could make that finding and then we'll let the board make the finding. But on the other hand, if we were to say, well, we think they have to determine the credibility, then a finding of persecution on account of political opinion is compelled by her story. Then we get closer to what Judge Ferguson, because if we remand it and the BIA says, okay, we find her not credible, that's the end of the case. But if they find her credible, then we've already told them how they've got to decide the case. So we have already decided if we assume her credibility. I guess this would give them the out to find her not credible on a remand. That's what Ventura would give them the option. That's correct, Your Honor. I believe that under the circumstances, remand would be appropriate under Ventura rather than the court deciding these issues. Because they might agree with the IJ that she was incredible. And then the issue on appeal would be whether that was what compelled or contrary decisions compelled. In summing up, I would just point out that under Elias Zacharias and this Court's precedents as well, the board's denial must be upheld unless the evidence is so compelling that no reasonable fact finder could fail to find the requisite persecution. Here, the government would submit that the board has clearly made its case. Its decision is supported by substantial evidence. And under its decision, the motive here was not on account of political opinion in whole or in part. Thank you. Thank you. My opponent has made the argument that in the other cases that this Court has decided, the guerrillas or persecutors expressed their motives out loud to the person who was being persecuted. But that isn't necessary under this Court's jurisprudence. Ernesto Navas is a case that tells us that we're allowed to look at common sense. And if there is no other logical reason for the persecution, there is absolutely no need for an expression of the particular beliefs that the guerrillas or other persecutors might have. My opponent also said that this was a personal dispute. But it was a personal dispute about guerrilla activities, about political activities. It started as a disagreement between a husband and a wife about which side of the Civil War they were on. And it escalated from there. And to ignore the political context for this fight, it seems to me, is error. This Court decided an opinion called Jahed in January that talks about context and the need to see these acts in the political context in which they occurred. And I think that that's the case here. Lastly, my opponent says that this, maybe firstly, she said, that this was not a forced recruitment case. But I think it was. It just involved a female. And the guerrilla's weapon was rape rather than beatings or death threats used on male recruits. There certainly was a discriminatory purpose. She wasn't a random victim of violence. The violence was due to her family's and her own anti-guerrilla sentiments. She endured a hell that most of us cannot imagine. And she is entitled to an asylum on account of it. She asks you to reverse the BIA on the question of political motivation and remand to the BIA for review of the IJ's credibility determination. Thank you. Well, during, when she was in the jungle with them, they kept coming after her. I think she was there for about three months. Correct. And kept trying to recruit her and gave her these green clothes. And she wouldn't, she wouldn't, didn't want to put them on. That's right, Your Honor. She testified that after a while they watched her less closely. And she, after three months, was able to find a time when no one was watching and simply walked off into the jungle and walked home. Took her three hours. So there definitely were recruitment activities throughout. Thank you. Thank you. The matter stands submitted.
judges: Pregerson, Thompson, Callahan